Incorporated, Woodstock, Harlem, ABC. On behalf of the appellant, Phyllis J. Perko. On behalf of the appellee, Stacey K. Sheppard. Good afternoon, counsel. Ms. Perko. Thank you. Good afternoon, your honors. May it please the court. This is an appeal from a grant of summary judgment to the defendant. Plaintiff's underlying action is one in negligence for personal injuries that were incurred during the course of a motorcycle training course that was provided by the defendant. The court claims regarding defendant's negligent acts are set forth in the opinion of its expert that was included in opposition to the motion for summary judgment. Essentially, these claims are that the defendant provided plaintiff with a motorcycle that was too large and too powerful for her size and her ability, and that it gave faulty instruction in the use of the motorcycle, particularly with reference to the use of the front brake and the clutch. The trial court ruled that the agreement, excuse me, that summary judgment was warranted because the plaintiff had signed an exculpatory agreement or a release from liability. And on that ground, it granted summary judgment to the defendant. It was for a training program, correct? It was for a training program. And the release said that? No, the release did not say that. And the title, it didn't mention training program? No, it did not mention the training program. And that's the core of our first ground for reversal. However, the name of the company included the word school, did it not? Isn't that the heading of the release? Woodstock Harley-Davidson Riding School? I was about to read that, yes. Woodstock Harley-Davidson Riding School. Correct. That is the title of, that is the block title on the top of the release. But however... That's what I was discussing, pointing out. It's on the release that it's a school, not a training program per se, but a riding school. Correct, Your Honor. Your Honor is correct in noting that. But with reference to our first basis for reversal, it's our position that this release is unenforceable as a matter of law. The principles regarding the enforceability of exculpatory agreements or releases of this nature are well established. And those principles include the rule that such exculpatory agreements generally are unfavored and must be strictly construed against the drafter or the party seeking relief from the release. This of course being the defendant in this case. But even accepting that, wasn't this release worded broadly enough to cover that? Well, it was worded quite broadly. You can see that. I believe there's a quote in our brief that indicates, however, that courts are less likely to enforce the terms of a release that are broad as opposed to those that are more specific. Certainly the rule of law is that in order to be enforceable, a release must be specific in its terms. And the nature of that specificity is very particular. It must be specific with reference to the activity from which the defendant will be relieved from a duty of care. So the activity in this case from which the defendant would be released from or is being released under the terms of the current trial court order is the activity of the defendant in giving this instructional course or this teaching course. The language of the release on which the trial court relied to find enforceability and to find applicability to the facts of this case is the language of the release that states that it applies to, quote, my use, end quote, of the motorcycle. My use, of course, meaning the plaintiff's use as it is the plaintiff and the plaintiff alone who signed this release. It's our position that the language of my use, meaning the plaintiff's use, is absolutely the wrong focus. The focus of the release is the release of the defendant's liability, and therefore it's necessary that the release address the defendant's activity from which it is being released from a duty of care. This release, except for the heading that Justice Burkett pointed out, in no way relates to a course of instructional activity or a class for motorcycle operation. Indeed, we would submit that the mere statement of riding school does not necessarily indicate that courses of instruction are being given. Certainly, the terms of this agreement in no way reflect its application to a course of instruction. Generally, we would submit to the court that a reading of the release most tends to indicate that it was or is a release for a rental situation of a motorcycle. So that the release does, specifically within its terms, address rental. And it also addresses situations such as repair and manufacture regarding the motorcycle. But in no way does it address the teaching activity of the defendant that is at issue in this case. What about the language that says, the training operator? I know that- Release of discharge to training operator, Harley Davidson, Inc. Does that just refer to the company, or does that refer to any other? Well, I think that that language, I submit to your Honor, that that language could be read as the agent of the defendant, the actual instructor who appears at the course, as opposed to the defendant who is the principal responsible for the course. This is particularly apt, and I will continue with this in my argument, but in this case, not only do we allege that the defendant provided the plaintiff with an inappropriate cycle, a too big and too powerful cycle. And that the defendant misinstructed, failed adequately to instruct the plaintiff on the use of the vehicle. But in fact, the defendant had made specific representations in the handbook that was supplied to the plaintiff as a part of this course, that it would essentially custom fit the plaintiff with a proper vehicle. And furthermore, that the core ambition of the motorcycle training course was to assure safety and to eliminate risks. That to eliminate the possibility that plaintiff would be a driving risk either to herself or others. So it is particularly these activities that the plaintiff, excuse me, that the defendant was undertaking, and specifically these undertakings in which the defendant reached its responsibility and duty of care. In addition to this nonspecific language regarding the plaintiff's use of the motorcycle, we submit that it is significant that the events of which we complain, providing the too powerful motorcycle and failing to instruct properly on the use of the motorcycle, actually occurred before plaintiff used the motorcycle. But her injury occurred as a result of the use of the motorcycle, which was clearly covered in the release. Well, her injury occurred while she was using the motorcycle, but except as an issue of contributory or comparative negligence, the negligence of which we complain occurred before that use. And we submit that that is significant. What about, you're suggesting that the language resulting from or arising out of, does not cover the entire arrangement? It only covers the operation of the motorcycle, not everything else related to the operation of the motorcycle? Well, the claim regarding defendant's negligence does not result from, nor arise from, plaintiff's use. Well, how did she get injured? She got injured riding a motorcycle. Correct. She got injured riding a motorcycle. So how can you argue that it's not related to her use of the motorcycle? Well, I'm not attempting to posit that it's not related to her use of the motorcycle. Well, that's what the release says, or relating to the use of the motorcycle. But defendant's activity, defendant's negligence, precedes. And in that regard, the focus is the defendant's, the release is the defendant's activity. The release is the duty of care involving the defendant's activity. And the defendant's activity precedes the use of the motorcycle. Specifically which activity are you talking about? Providing the plaintiff with a motorcycle that was too big and too powerful for her physique. So that all was complete and done before the release kicks in. Correct. One of the very first things that happens, as I understand, the deposition testimony that's included with the summary judgment motion, is that that motorcycle is provided right at the beginning. I mean, this is also in. But they were instructing her as she was using it. I believe that. So you had talked about, you complained of the faulty instruction. But that instruction didn't all happen first. It happened while she was riding the motorcycle and using it. Well, but that instruction, according to the expert's opinion, refers quite specifically to the use of the front brake and the use of the clutch. And as it's tied into the expert's opinion, that proper instruction in use of the front brake and the clutch would have prevented the accident which eventually occurred. So I think it's inferable that the instruction that we are talking about occurred before that accident. Before the accident. I mean, the instruction occurred while she was riding the motorcycle. I mean, during the period of time that she was riding the motorcycle. Correct. I mean, she took, as I recall, a couple of runs, and it was really on the third or so that this happened when, instead of slowing down, somebody was going to T-bone her and she accelerated instead of slowed down and stopped. But even if we were to leave aside for the moment this question about the instruction, we still would be left with the question of that regarding a motorcycle too big and powerful. How was she injured? She basically ran through a wall on the motorcycle. And she was on a motorcycle at that time, and she was using a motorcycle at the time of injury. Correct. How do we get around that? Because it is such a broad statement to talk about use without context. I believe that. All right. That was the argument that you've made now a couple of times. But what would you have a release say to comport with what you believe it would have to articulate? I think any mention of a course of instruction. I mean, just even the barest mention that this release applies to the course of instruction. Why else was she there and signing this release but for to get this instruction? Why else was she there? I mean, she wasn't renting a motorcycle. She wasn't buying a bike and taking that one with her. She was there on that bike for purposes of instruction, right? That's correct. So how do we ignore that? Because there is a notice requirement regarding foreseeability. And I haven't gotten to that part of my argument, but certainly it is in my brief regarding foreseeability. And what an exculpatory agreement does is it shifts and creates an assumption of risk in the party signing of the release. In order for that assumption of risk to be effective, the party signing has to have notice and foreseeability of the conduct that's being covered. Use of the motorcycle? Well, not use of the motorcycle. Faulty instruction and faulty providing of a motorcycle, particularly in a context because we can talk about signing the agreement, which is contemporaneous, as I understand the deposition testimony, with providing the plaintiff with the handbook, which says that we or I, the defendant, am going to give you a proper motorcycle and I'm going to essentially properly to instruct you. So you may ask, you know, what else could the plaintiff have thought? But indeed, what could she have thought when on the one hand she's signing a release of liability and on the other hand she is being given a specific written representation that the defendant is going to act in a certain way? As it turns out, the defendant has not, or at least according to the plaintiff's position at this point and the plaintiff's expert's opinion, the defendant did not act in that way. So as a matter, if not as a matter of law regarding the enforceability of this agreement, certainly there is a question of fact regarding what the parties intended when they signed this release, which I think except for that heading at the top does not refer to a course of instruction. And on the other hand, we have these representations that the defendant is going to take these precautions and do these actions during the course of instruction. So certainly it is our position that that raises a question of fact as to what was intended by this release. In the circumstances, given what Justice Jorgenson was talking about earlier, though that she was there to get instruction at a school not to rent a motorcycle, not to buy a motorcycle, not to just view motorcycles, it stretches common sense just, it's hard to come to that conclusion, I think. Well, again, you know, it's our position that we're talking about my use, meaning the release, is talking about my use, the plaintiff's use of the motorcycle, without any reference whatsoever to the defendant's activity or the nature of the negligence that the defendant is alleged to have been liable for. Wouldn't it make sense if there was, to me, if there was a negligent teaching of her, okay? And when she goes out on the road with her new motorcycle, with all of that information that she's just been taught in her mind, and for what, let's say, for example, she misuses the clutch because that's the way she was taught to use it. It stalls out and she gets hit. That, I can see that the injury there is tied back to the faulty instruction. But how is the faulty instruction tied to anything other than her use of the motorcycle in the course of this training program? As opposed to something outside of the training program. Tell you what, actually, you're- Your time is right, yes. I'm going to speak about that. It is, right. Do you have another question? Answer it on that. Okay. Well, you'll have time to go back. Okay. I just wanted to, that was unfair. I sort of gave you a tough question and you can think about it. Okay. Ms. Shelley? Thank you, Your Honors. May it please the court and counsel, my name is Stacey Shelley and I represent the defendant appellee in this case, the Big Picture Incorporated, doing businesses, Woodstock, Harley-Davidson. The issue before the court today is whether the trial court correctly granted summary judgment in favor of the defendant. Based upon all of the facts in the record and the applicable law, it is our position that the trial court correctly determined that the plaintiff appellant's claims of negligence against the defendant, including those for negligent instruction, are wholly barred by the release of liability that the plaintiff executed as a participant in the Woodstock-Harley Riding School. What about counsel's argument that the wording of this clause is far too broad to cover this situation? Well, the case that counsel relies on for her argument that essentially the broader the language, the less likely a court is to enforce it is actually, I believe, taken from an unpublished federal district court case she didn't cite to an Illinois state case, though I believe that that federal case was, in fact, applying Illinois law. But aside from that, I think if we look at the language of the release, we focused primarily on the phrase, my use of the motorcycle. But the release itself actually contains more language than that. It talks about the use by any other person, the operation of the motorcycle, the conditions under which the motorcycle is used. Those claims expressly include claims of negligence for any injury to herself arising out of the motorcycle. So I would posit to you that the release itself is actually not as broad as the plaintiff has argued. I think it is specifically tailored to exactly the situation which we have in this case. What about the riding school's essentially promise in their materials that they provided that every rider would be fitted to a motorcycle that's appropriate for you based upon your skill level, comfort, and riding style? Why should this release cover the use of a motorcycle that Harley Davidson says, according to this handout or this beginner rider booklet, she wasn't fitted to a motorcycle for her size based upon the facts as we know them? That's the plaintiff's allegation. Well, is there a material question of fact regarding that? Whether or not she was properly fitted, which, again, the use of the motorcycle is one thing, but properly fitting her to a motorcycle for her size, is that covered by the release? I believe that it is, Your Honor. First of all, I don't think we actually get to a material issue of fact in this case because we are at this point interpreting the contract itself, and we're looking at the legal effect of the terms in the release. What do we look at for purposes of the contract? Do we look at just the release in isolation, or do we look at all the documents that were given during that transaction in exchange for her payment for riding the bike in this training program? Do we look at just the release in isolation, or do we consider the whole picture? I believe, Your Honor, that the terms contained within the release are sufficient to encompass any claims made in any of the rest of the part of the training materials. Your Honor asked about the improper fitting of the motorcycle, and I believe that the phrase that immediately follows my use in the release is used by any other person of the motorcycle. I believe that the plaintiff's allegations that the bike was improperly fitted can be easily and are clearly encompassed within the term anybody else's use of the motorcycle. I think it's also encompassed in the conditions under which the motorcycle is used, which are clearly, and as Your Honor has pointed out, was within the context of the riding school. So I believe that... Well, clearly, not every motorcycle, there's no one-size-fits-all, right? No, that's true. I mean, otherwise, why is this language even in these materials? And she's given a motorcycle that just doesn't fit her size. That's her claim. We would not agree with that allegation that the motorcycle that she was on was improperly fitted to her. But at this point, for purposes of our review, we have to take her claims as fact, don't we? They're not disputed in the record, are they? Except to the extent that they're denied in the answer to the complaint. I don't believe we have to deal with issues of fact with respect to the interpretation of the contract because we don't need to look. There's no ambiguities within the release itself. The release is very clear. The trial court said that its terms were clear and explicit. We don't get to an issue of material fact because the release is so clear, and everything to do with the training course is clearly encompassed within the terms of the release, her use of the motorcycle, the conditions under which it's operated. Counsel doesn't cite to, and I don't believe that there is any cases that specifically require that the term instruction be included in order for a release to be effective. The cases talk about being put on notice of what the range of activities are. Aside from the fact that the plaintiff clearly signed up to take this course, showed up to take the course, was given the training materials, signed the release before the course started. I believe her testimony is that it was about the first thing that they had to do, certainly before she was fitted for a motorcycle. What about this release specifically gave the plaintiff notice that she was releasing the defendant from negligence in instructional activities? What can you point to? Well, as Your Honors pointed out, it does say Woodstock Harley Riding School in large underlying font at the top of the page. It also talks about the conditions under which the motorcycle is operated. There's no conditions under which the motorcycle was operated by the plaintiff in this situation except as part of the Woodstock Harley Riding School. She was also put on notice with the language that it arises out of her use or any use by any person. I think it is illogical to suggest that she didn't know that she was releasing. And in fact, her testimony at her deposition was that she understood that she was releasing the people offering the course from any liability should she be hurt. So her own testimony is that she understood that she was releasing the people offering the course from liability should she be hurt. I'm not sure how we can interpret that not to mean that she understood that she was releasing them with all claims, the people teaching the course. The people teaching the course are the people providing the instruction. If she's not releasing her statement was that she understood that she was releasing from the instruction. Arising out of or relating to the use of the motorcycle. Is that the language? It is. That is part of the language. Out of the use of the motorcycle, out of the use of the motorcycle by any other person, out of the operation of the motorcycle and the conditions under which the motorcycle is used is the language from the release. This is not a situation where she was releasing the, this isn't a situation where she was injured because she slipped and fell on the floor inside the dealership on her way out to ride the motorcycle. This is a situation where she was specifically there to learn to ride a motorcycle and in doing so she actually had to ride a motorcycle. She was injured in precisely the way that's contemplated by requiring her to sign the release. That she would be injured while learning to ride the motorcycle as a part of the course and that is what was released. And the trial court I think appropriately held that the terms of the release were clear and explicit and did not need to include simply the term instruction but that it was all related to her use of the motorcycle and that you can't divorce the two. How do you respond to counsel's argument that the negligence occurred prior to her actually riding the motorcycle in that it related to improper fitting and the instruction occurred prior to her actually getting on the motorcycle and riding it, that it all occurred prior to her use? I believe that the plaintiff is trying to create a false distinction between instruction and use. She argues that the instruction occurred before the use obviously. That frankly ignores the fact that it's a five-day training course all under the direct supervision and instruction of the court's instructors. I think that the appellate court in Platt v. Gateway Motors considered an issue similar to this where the plaintiff in that case was injured by a tow truck driving around an auto racing track before the actual race. The plaintiff in that case tried to argue the language in the release that talks about an event that they were specifically only referring to the race itself. The appellate court was not persuaded by that argument and found that the language in the release was broad enough with respect to the term invent to include all the matters related to the event, including I think they specifically referenced time trials, which I believe was related to the tow trucks driving around the course, and that they could not divorce event, the broader term event from the specific race, that they couldn't simply say, well, because they actually weren't running the race at the time you were injured, it doesn't count as part of the event. I would argue that that is similar to the situation that we have in this case, which is that you cannot divorce instruction from use. The instruction was ongoing the entire time. The use was ongoing nearly the entire time. I think they are one and the same, and it attempts to divide out improperly that which is contained in the release, which is arising and resulting, my use, the use of any other person, which would certainly, if the argument is that the improper fitting occurred before the use, meaning literally before she got on the motorcycle and started to drive around the training course on it, that that would encompass the use by another person, would be the writing school instructors choosing that motorcycle, putting her on that motorcycle. That's the use of that motorcycle by another person. That's encompassed within the terms of the release. The instruction with respect to the clutch, the allegations that they improperly didn't teach her to cover the clutch properly, I think something to do with the brake as well, that's ongoing the entire time as well. That's ongoing. I think her testimony is that the first thing they did was sat on the motorcycle and put their hands in position. So that's certainly instruction. She's certainly using the motorcycle at the time. That instruction is occurring. I don't know how. There's no basis to separate the two, I don't believe. I think the plaintiff wants to place emphasis on the fact that she thought she wouldn't get hurt, that she's surprised it happened. But I don't believe that that does anything to impair her admitted understanding of what the release entailed. Similarly, the plaintiff also tries to talk about her experience and that that's somehow material to the consideration on this case. I don't believe there are any cases that reference the experience of the rider. Essentially, what the plaintiff wants this court to do is to expand the requirements of what you need to put into a release in order for it to be effective. What the plaintiff is seeking is to have some sort of laundry list of every possible way someone could get hurt before they sign a release. And if for some reason that specific phrase is not in the release, well, then the release is ineffective. And I don't believe that that is the law in Illinois. Harris v. Walker, the Illinois Supreme Court clearly stated that it is the general rule in Illinois to enforce exculpatory agreements. If you have a concluding sentence that you're in the middle of a sentence. No, that'll be fine, Your Honor. Thank you very much. Thank you. Ms. Perko? First, I would like to respond to Defendant's counsel's suggestion that there is not an issue of fact involved in this case. And this has to do with whether or not a risk that is assumed is normal and ordinary to the activity that the defendant is performing. There isn't any question here but that the defendant is performing an instructional course. We would submit to Your Honors that what is typical and ordinary for an instructor, a teacher in virtually any context, is that they are performing by the book, so to speak. That they are imparting accurate information and that they are properly guiding the student in the endeavor. So it is not usual in the normal course of teaching or instruction for the teacher to deviate and to impart inaccurate information and to lead the student in a way that's inappropriate as this defendant did by providing the too powerful bite. When you have a consequence or a risk that is not ordinary to the endeavor, what the case law says, and specifically in our brief we rely on Simpson v. Byron Dragway, what the case law says is that that raises a question of fact as to what the parties intended by the terms of the release. And in that case, what was out of the ordinary? What was not ordinary? A deer ran across the raceway. So that situation was held not ordinary to the school of race driving, and therefore raised a question of fact as to whether the parties intended that this particular situation was within the terms of the release. And the situation is what? In the case at Byron? No, in this case, yes. In the case at Byron, the situation is the defendant not acting consistently, for instance, with those things that were represented in the handbook, and the two particular ones. But the accident was not a deer running in front of the plaintiff. The accident was misjudging a turn on a motorcycle that was allegedly too big for her. The factual situation is quite different in the two cases. Right. But the underlying rule of law. The rule of stare decisis provides that we, you know, you can't take the facts or the holding in a case out of context. You have to look at the factual background. Well, I don't agree that that's what stare decisis means. I believe stare, I believe that stare decisis gives honor to rules of law, and it certainly gives honor to application of those rules of law in highly similar cases. Right. But stare decisis does not say that a rule of law, to my understanding. Are you saying that the deer running across the track is highly similar to the facts of this case? Absolutely, I am not saying that. Okay, thank you. No, and the facts are very. I understand my point. These facts are markedly different. The facts are markedly different, but the underlying legal question is whether or not the conduct that caused the risk, whether or not that was reasonably foreseeable, and that presents a question of fact. So that the question of fact in this case is whether or not it is reasonably foreseeable that the defendant would act inconsistently with the representations made in the handbook, and therefore, when the plaintiff signed this release, did the plaintiff have reasonable foreseeability and notice that she was releasing the defendant from this type of conduct? Thank you very much, counsel. The court will take this matter under advisement and render a decision in due course. We stand adjourned for the day. Thank you.